UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL DIVISION

CASE NO.:

CHARLES H. KINSEY,

    Plaintiff,

v.

JONATHAN ALEDDA,
a resident of the State of Florida,

    Defendant.
_____/

**COMPLAINT**

Plaintiff, CHARLES H. KINSEY ("Mr. Kinsey"), brings this Complaint against Defendant, JONATHAN ALEDDA ("Officer Aledda"), in his individual capacity, and alleges the following:

**THE PARTIES, JURISDICTION, AND VENUE**

At all times material to this action:

1. Mr. Kinsey was and is a citizen of the State of Florida, and a resident of Miami-Dade County, Florida.

2. Officer Aledda, was and is a resident of the State of Florida and was acting within the scope of his employment as a law enforcement officer with the City of North Miami Police Department.

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

1

4. Venue is proper in this District because the events giving rise to this claim all occurred within Miami-Dade County, Florida.

## THE FACTS GIVING RISE TO THE CLAIM

5. Mr. Kinsey is a behavioral technician at Miami Achievement Center for the Developmentally Disabled (hereafter "MACtown").

6. Mr. Kinsey's job required him to assist autistic adults in their day-to-day activities.

7. MACtown operates several group homes for mentally disabled individuals, including a home located near the intersection of NE 127 Street and NE 14 Avenue in North Miami, FL. For purposes of the Complaint, this residence will generally be referred to as "MACtown."

8. Arnaldo Rios (hereafter "Mr. Rios") is a 26-year-old male who suffers from extreme autism and resided at MACtown when this incident occurred.

9. On July 18, 2016, Mr. Rios walked out of MACtown and sat in the middle of the intersection of NE 127 Street and NE 14 Avenue in North Miami, FL.

10. Mr. Kinsey followed Mr. Rios and attempted to persuade him get up from the intersection and to re-enter MACtown.

11. A passerby saw Mr. Rios sitting in the middle of the intersection and called the police.

12. The passerby specifically noted that Mr. Rios appeared to be mentally disabled, and that Mr. Kinsey was trying to help Mr. Rios.

13. The caller gave a detailed description of both Mr. Kinsey and Mr. Rios, which included their race, ethnicity and clothing.

14. Shortly thereafter, officers from the North Miami Police Department arrived on scene.[1]

15. Mr. Rios was still sitting in the middle of the roadway playing with his toy truck while Mr. Kinsey stood next to him.

16. Several officers, including Officer Aledda, immediately retrieved assault rifles from the trunks of their cars and approached Mr. Kinsey in a military style formation.

17. Mr. Kinsey immediately raised his hands in the air, told the officers that he and Mr. Rios were unarmed, and pleaded with the officers not to shoot.

18. The officers yelled to Mr. Kinsey, "Get down on the ground!" Mr. Kinsey immediately complied and laid down flat on his back with his hands still in the air.

19. Mr. Kinsey told officers, including Officer Aledda, that he is a behavioral technician at the group home down the street, and that Mr. Rios is his autistic patient – which was readily apparent to anyone observing.

20. Mr. Kinsey also told the officers that both he and Mr. Rios were unarmed, that that the object in Mr. Rios' hand was a toy truck[2], and that there was no need for firearms.

21. All officers, including Officer Aledda, were close enough in proximity to hear Mr. Kinsey's statements, and one officer even announced over the police radio, "It's a toy truck, he's saying it's a toy truck."

---

[1] All of the officers involved, including Officer Aledda, were acting under color of state law as police officers of the North Miami Police Department.

[2] A civilian witness recorded a significant portion of this incident on his cell phone. It is clear from the video that the object in Mr. Rios' hand is a toy and does not even closely resemble a firearm.

22. Furthermore, it was clear from Officer Aledda's vantage-point that Mr. Rios was holding a toy truck and that Mr. Kinsey's hands were in the air.

23. Mr. Kinsey asked the officers whether he could get up from the ground.

24. Several officers denied Mr. Kinsey's request, ordered him to remain on the ground, and continued to point their firearms at him.

25. Mr. Kinsey again stated that he is a behavioral technician, that neither he nor Mr. Rios are armed, that Mr. Rios has a toy truck in his hand, and that there is no need for guns.

26. During this entire incident, Mr. Kinsey fully complied with the officers' commands and kept his hands raised in the air.

27. Neither Mr. Kinsey nor Mr. Rios were armed with a weapon or firearm.

28. Additionally, Mr. Rios did not make any threatening movements toward Mr. Kinsey – Mr. Rios did not stand over Mr. Kinsey, point his toy truck at him, or say anything that would indicate that he was about to harm Mr. Kinsey.

29. Even though Mr. Kinsey fully complied with police commands for approximately five minutes, Officer Aledda, without warning, fired three shot from his AR-15 assault rifle toward Mr. Kinsey – one of them striking Mr. Kinsey in the leg.

30. Both Mr. Kinsey and Mr. Rios were on the ground in the manner stated above when Officer Aledda fired his rifle.

31. After Officer Aledda shot Mr. Kinsey, several officers rushed Mr. Kinsey and placed him in handcuffs.

32. The handcuffs were so tight that Mr. Kinsey's blood was not circulating to one of his hands.

33. It is important to note that, when Officer Aledda fired his weapon, neither Mr. Kinsey nor Mr. Rios had committed a crime, posed a threat toward any officer, civilian, or each other; nor did Mr. Kinsey or Mr. Rios attempt to evade arrest.

34. Officer Aledda also failed to render aid after shooting Mr. Kinsey; he did not place pressure on Mr. Kinsey's wound or offer Mr. Kinsey a bandage.

35. Officer Aledda, along with other officers, left Mr. Kinsey bleeding and handcuffed on the pavement in the hot Florida sun until fire rescue arrived, which was a significant time later.

36. Mr. Kinsey requested to be moved to a shaded area and asked for water; Officer Aledda and other officers failed to respond to Mr. Kinsey's request.

37. Officers confiscated Mr. Kinsey's belongings, including his wallet, identification, keys and cell phone.

38. As a result of Officer Aledda's actions, Mr. Kinsey is unable to engage in certain physical activities, and has suffered damages, including, but not limited to, pain and suffering, mental anguish, and emotional distress.

### COUNT I:  FOURTH AMENDMENT EXCESSIVE FORCE – OFFICER JONATHAN ALLEDA

39. Mr. Kinsey re-alleges the allegations contained in paragraphs 1-38 of this Complaint.

40. This count is brought by Mr. Kinsey pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by North Miami Police Officer Jonathan Aledda in his individual capacity.

41. Officer Aledda violated Mr. Kinsey's clearly established Fourth Amendment right to be free from excessive force during police seizures when he shot Mr. Kinsey in the leg.

42. While Mr. Kinsey attempted to assist his autistic client, the police approached him with their firearms raised and demanded that he get on the ground.

43. Mr. Kinsey complied immediately, even though he had not committed a crime and the citizen's complaint was directed toward Mr. Rios.

44. Mr. Kinsey explained that he was a behavioral technician, that Mr. Rios was his autistic patient, and that neither of them were armed.

45. Mr. Kinsey asked if he could get up, but the police demanded that he remain on the ground.

46. Mr. Kinsey told officers that Mr. Rios was holding a toy truck and there was no need for guns.

47. Officer Aledda was close enough in proximity to hear Mr. Kinsey's statements.

48. Furthermore, one officer announced over the police radio, "He's saying it's a toy truck, it's a toy truck."

49. From Officer Aledda's vantage-point, it was clear that Mr. Rios was holding a toy truck, and that Mr. Kinsey had his hands in the air.

50. Nevertheless, Officer Aledda fired three shots in Mr. Kinsey's direction – one of them hitting Mr. Kinsey in his leg.

51. Officers rushed Mr. Kinsey and handcuffed him until fire rescue arrived.

52. Neither Mr. Kinsey, nor Mr. Rios had committed a crime, posed a threat toward any officer, civilian, or each other, nor did Mr. Kinsey or Mr. Rios attempt to evade arrest.

53. Therefore, Officer Aledda's act of shooting Mr. Kinsey was unwarranted and unreasonable under the circumstances, and he is therefore liable for Mr. Kinsey's injuries.

54.     During this incident, all officers, including Officer Aledda, were acting under color of state law as North Miami police officers.

WHEREFORE, Plaintiff, Charles H. Kinsey, demands judgment for his economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

### COUNT II:  FOURTH AMENDMENT FALSE ARREST – OFFICER JONATHAN ALEDDA

55.     Mr. Kinsey re-alleges the allegations contained in paragraphs 1-38 of this Complaint.

56.     This action is brought by Mr. Kinsey pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by North Miami Police Officer Jonathan Aledda in his individual capacity.

57.     Officer Aledda violated Mr. Kinsey's clearly established Fourth Amendment right to be free from false arrest and imprisonment when he and other officers arrested Mr. Kinsey without probable cause.

58.     Mr. Kinsey is a behavioral technician at MACtown and assists autistic adults in their day-to-day activities.

59.     On July 18, 2016, Mr. Rios walked out of MACtown and sat in the middle of the intersection of NE 127 Street and NE 14 Avenue in North Miami, FL.

60.     Mr. Kinsey followed Mr. Rios and attempted to persuade him get up from the intersection and to re-enter MACtown.

61.     A passerby saw Mr. Rios sitting in the middle of the intersection and called the police.

62. The passerby specifically noted that Mr. Rios appeared to be mentally disabled, and that Mr. Kinsey was trying to help Mr. Rios.

63. The caller gave a detailed description of both Mr. Kinsey and Mr. Rios, including race, ethnicity and clothing.

64. When North Miami officers arrived on scene, Mr. Rios was still sitting in the middle of the roadway playing with his toy truck while Mr. Kinsey stood next to him.

65. Both of their appearances matched the caller's description.

66. Several officers, including Officer Aledda, immediately retrieved assault rifles from the trunks of their police cars and approached Mr. Kinsey and Mr. Rios in a military style formation.

67. Mr. Kinsey immediately raised his hands in the air, told the officers that he and Mr. Rios were unarmed, and pleaded with the officers not to shoot.

68. The officers yelled to Mr. Kinsey, "Get down on the ground!" Mr. Kinsey immediately complied and laid down flat on his back with his hands still in the air.

69. Mr. Kinsey told officers, including Officer Aledda, that he is a behavioral technician at the group home down the street, and that Mr. Rios is his autistic patient (which was readily apparent to anyone observing).

70. Mr. Kinsey repeatedly told the officers that both he and Mr. Rios were unarmed, and that the object in Mr. Rios' hand was a toy truck, which was clearly visible to the officers on scene, including Officer Aledda.

71. Mr. Kinsey asked the officers whether he could get up from the ground.

72. Several officers denied Mr. Kinsey's request and ordered him to remain on the ground.

73. Officer Aledda assisted his fellow officers by continuing to point his firearm at Mr. Kinsey.

74. Officer Aledda then shot Mr. Kinsey in the leg and other officer rushed in and handcuffed Mr. Kinsey.

75. It is important to note that, when Officer Aledda fired his weapon, neither Mr. Kinsey nor Mr. Rios had committed a crime, posed a threat toward any officer, civilian, or each other; nor did either one of them attempt to evade arrest.

76. Officer Aledda left Mr. Kinsey handcuffed on the pavement in the hot Florida sun until fire rescue arrived.

77. The officers confiscated Mr. Kinsey's belongings, including his wallet, identification, keys and cell phone.

78. Accordingly, Officer Aledda, and other officers improperly seized Mr. Kinsey against his will and without probable cause.

79. As a result, Officer Aledda is liable to Mr. Kinsey for his damages, including, but not limited to, pain and suffering, mental anguish, and emotional distress.

WHEREFORE, Plaintiff, Charles H. Kinsey, demands judgment for his economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

**COUNT III: FOURTEENTH AMENDMENT DUE PROCESS/FAILURE TO RENDER AID – OFFICER JONATHAN ALEDDA**

80. Mr. Kinsey re-alleges the allegations contained in paragraphs 1-38 of this Complaint.

81.     This action is brought by Mr. Kinsey pursuant to title 42, section 1983, United States Code, for the deprivation of his Civil Rights caused by North Miami Police Officer Jonathan Aledda in his individual capacity.

82.     Officer Aledda violated Mr. Kinsey's clearly established Fourteenth Amendment right to due process when he shot Mr. Kinsey in the leg and failed to render aid.

83.     On July 18, 2016, Mr. Kinsey attempted to persuade his autistic client to get out the street and re-enter his group home.

84.     A passerby told the police that Mr. Rios appeared to be mentally disabled, and that Mr. Kinsey was trying to help Mr. Rios.

85.     The caller gave a detailed description of both Mr. Kinsey and Mr. Rios – including race, ethnicity and clothing.

86.     When North Miami officers arrived on scene, several officers, including Officer Aledda, immediately retrieved assault rifles from their trunks and approached Mr. Kinsey in a military style formation.

87.     Mr. Kinsey immediately raised his hands in the air, told the officers that he and Mr. Rios were unarmed, and pleaded with the officers not to shoot.

88.     The officers yelled to Mr. Kinsey, "Get down on the ground!"  Mr. Kinsey immediately complied and laid down flat on his back with his hands still in the air.

89.     Mr. Kinsey told the officers that both he and Mr. Rios were unarmed, and that the object in Mr. Rios' hand was a toy truck, which was clearly visible to the officers on scene, including Officer Aledda.

90.     Mr. Kinsey asked the officers whether he could get up from the ground.

10

91. Several officers denied Mr. Kinsey's request and ordered him to remain on the ground.

92. Mr. Kinsey complied with all of the officers' commands.

93. Nevertheless, Officer Aledda shot Mr. Kinsey in the leg while he laid on the ground with his hands raised.

94. Several officers then rushed in and handcuffed Mr. Kinsey so tightly that his blood was not circulating to one of his hands.

95. During this entire incident, all officers, including Officer Aledda, were acting under color of state law as North Miami police officers.

96. Officer Aledda, and other officers, failed to render aid to Mr. Kinsey after he was shot.

97. Officer Aledda failed to place pressure on Mr. Kinsey's wound or offer him a bandage.

98. Officer Aledda left Mr. Kinsey handcuffed on the pavement in the hot Florida sun until the ambulance arrived a significant time later.

99. Officer Aledda failed to respond to Mr. Kinsey's request for water and shade.

100. By failing to render aid, Officer Aledda allowed Mr. Kinsey to unnecessarily bleed out on the ground for a significant period of time, which further exasperated Mr. Kinsey's recovery time for his injuries.

101. Officer Aledda acted with a deliberate indifference toward Mr. Kinsey's medical needs by failing to provide prompt attention to his gunshot wound, which was caused by Officer Aledda's unnecessary act.

102. As a result of Officer Aledda's actions, Mr. Kinsey has suffered damages, including, but not limited to, pain and suffering, mental anguish, and emotional distress.

WHEREFORE, Plaintiff, Charles H. Kinsey, demands judgment for his economic and noneconomic damages, attorney's fees, the costs of prosecuting this action, and any other relief this Court deems proper and just.

### DEMAND FOR JURY TRIAL/ATTORNEY'S FEES

Officer Aledda demands a jury trial of all issues so triable as of right by a jury and for attorney's fees.

DATED: August 3, 2016.

Hilton Napoleon Esq., FBN 17593
RASCO KLOCK  PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7111
Facsimile: 305.675.7707
Email: hnapoleon@rascoklock.com

*Counsel for the Plaintiff, Charles H. Kinsey*


By: /s/ Hilton Napoleon, II
    Hilton Napoleon, II